UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAYMOND U. ARNDT,

Plaintiff,

v.

MOKAI MANUFACTURING, INC.,

Defendant.

Civil No. 03-1240-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff Raymond Arndt (plaintiff) filed a Complaint against defendant Mokai Manufacturing, Inc. (defendant) on September 11, 2003, alleging patent infringement regarding a jet-propelled kayak-like water craft. Defendant brings a Motion for Summary Judgment for Indefiniteness [38] and a Motion for Summary Judgment for Non-Infringement [87]. The court heard oral argument on these motions on November 21, 2005.

For the following reasons, defendant's Motion for Summary Judgment for Non-Infringement is

GRANTED and defendant's Motion for Summary Judgment for Indefiniteness is DENIED.

**BACKGROUND**

Plaintiff holds United States Patent No. 5,481,997 (the '997 patent) for a "Water Jet Propelled Kayak." The abstract of the '997 patent describes the water craft as a kayak having "a kayak-stye hull with one or more cockpits, and an inboard power device that accelerates water and directs it out a steerable stern nozzle." Defendant is a New York corporation that manufactures and sells a product called "Mokai" (the Mokai). The Mokai is a jet-propelled sport boat. Plaintiff asserts that defendant's sales infringe on claims one through eight and fifteen through eighteen of plaintiff's '997 patent.

Plaintiff first filed the application upon which the '997 patent issued on April 26, 1994. At that time, the patent application consisted of claims one through eight. On August 4, 1994, the patent application was rejected as obvious over two prior art references, Patent No. 4,229,850 to Arcouette (the Arcouette patent) in view of Patent No. 3,369,518 to Jacobson (the Jacobson patent). The Arcouette patent discloses "a kayak with a hull defining an operator's cockpit and a stern," but not a jet powering system. The Jacobson patent discloses "a jet powering system including intake means, redirecting means, and controlling means." In initially rejecting plaintiff's application, the examiner stated that "[i]t would have been obvious to a person of ordinary skill in the art at the time the invention was made to form the kayak of Arcouette with jet powering means in the manner taught by Jacobson for improved ease of use by using motor instead of man power." Plaintiff's Application (Submitted as Defendant's Exhibit M in Support of Defendant's Memorandum Regarding Claim Construction) at 1 (hereinafter Def.'s Ex. M).

On February 2, 1995, plaintiff submitted an amendment to his patent application.

Plaintiff added claims nine through eighteen and responded to the examiner's rejection by arguing that his invention should be distinguished from the prior art. Plaintiff argued that there is "no teaching, suggestion, or incentive that the water jet of Jacobson be combined with the kayak of Arcouette." Def.'s Ex. M at 4.

Specifically, plaintiff stated:

> The instant invention is a new class of personal water craft, novel and unique from the referenced art, including the powered canoes. Powered canoes can easily swamp and be subject to power failure, and cause injury to an occupant if used in extreme white water conditions. Also the drive units conventionally used would be damaged in shallow water use (such as in white water) and the propellers could be dangerous to an operator in the event of a capsize. These disadvantages are overcome by the instant invention. This invention adds a safe and completely internal propulsion system to a kayak without impeding the use of manual paddle power, and it gives the operator the ability to improve his or her maneuverability by simultaneous use of paddles and power (See Claims 9-18).
>
> * * *
>
> To reiterate, this invention provides a safe drive unit completely within the confines of hull and deck in an engine compartment. Also the kayak has the ability to right itself with the aid of the operator when capsized. This is certainly an added safety factor over canoes and other vessels with motors.
>
> Using a water jet propulsion system releasing the water jet through a steering nozzle out the stern while keeping the basic symmetry and traditional decked, double-ended design of a kayak is the first major improvement of the kayak regarding propulsion in two thousand years. That and all other improvements prior to this application have been primarily aesthetic or material changes still requiring the only mode of propulsion to the manual paddle.
>
> Please note that the engine of the instant invention (claims 15-18) is in a watertight compartment and is [sic] contacted by water even when capsized.

Def.'s Ex. M at 4-5.

The '997 patent, consisting of all the claims—one through eighteen—issued on January 9, 1996.

**PROCEDURAL HISTORY**

This court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*Markman I*) and *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (*Markman II*) on April 23, 2004. On December 27, 2004, this court issued an Opinion and Order [62] construing the terms of plaintiff's patent claim. This construction is addressed below.

**STANDARDS**

Pursuant to the Federal Rules of Civil Procedure, "a judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(c). The non-moving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the

existence of that element of the case or be subject to summary judgment. *Celotex*, 477 U.S. at 322. Such an issue of fact is only a genuine issue if it can be resolved reasonably in favor of either party. *Anderson*, 477 U.S. at 250-51. This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Mere disagreement or a bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). In other words, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Special rules of construction apply when evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

Summary judgment is as appropriate in patent cases as in any other civil action where there is no genuine issue of material fact to be resolved at trial. *Barmag Barmer*

*Maschinenfabrig AG v. Murata Mach.*, Ltd., 731 F.2d 831, 835 (Fed. Cir. 1984). The summary adjudication of the issue of infringement is appropriate when "a properly interpreted claim with an uncontested description of the accused device reflects the absence of a genuine issue of material fact." *Chemical Eng'g Corp. v. Essef Inds*., 759 F.2d 1565, 1571 (Fed. Cir. 1993); *Deuterium Corp. v. United States*, 16 Cl. Ct. 454, 458-459 (Ct. Cl. 1989); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985).

**DISCUSSION**

**A. Literal Infringement.**

A patent infringement analysis is a two-step process. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). First, the meaning and scope of the patent claims allegedly infringed upon must be determined. *Id.* (citing *Markman II*, 517 U.S. at 371-73). This step is referred to commonly as "claim construction" or "claim interpretation." *Markman II*, 517 U.S. at 391 (the construction of scope and meaning of the patent is a question of law for the court to decide, although the ultimate question of infringement may remain for the jury). In the Opinion and Order issued December 27, 2004, this court construed the relevant claim limitation terms as follows:

> The term "kayak" [means]: traditional kayaks, more modern sporting kayaks, and kayak-like boats that (1) are not subject to power failure or swamping when used in extreme white water conditions; (2) have propellers that are not dangerous to operator in event of a capsize; (3) have a completely internal propulsion system; (4) allow for use of manual paddle power alone or simultaneously with motor power; (5) have ability to right themselves with the aid of the operator when capsized; and (6) have the *basic symmetry* and traditional decked, double-ended design of a kayak
>
> * * *
>
> The court defines the term "*double-ended*" to mean: the ends become gradually more narrow toward bow and stern with a

transverse dimension no greater than 45% of the maximum beam.

Opinion and Order issued December 27, 2004, at 16-17, 19 (hereinafter Opinion and Order) (emphasis added).

After the claims are construed, the claims must be compared to the device or method that it is accused of infringing. *See Cybor Corp.*, 138 F.3d at 1454. To establish literal infringement, every limitation set forth in a claim must be found in the accused product. *See Southwall Tech., Inc., v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

Defendant focuses its arguments regarding non-infringement on the following claim limitations: 1) Double-Ended and 2) Basic Symmetry.

1. Double-Ended Limitation.

Defendant argues that the Mokai does not infringe on the '997 patent because it lacks the double-ended limitation required by the '997 patent' claim construction. Specifically, defendant contends that the distance from the Mokai's beam[1] to the water craft's stern does not gradually become more narrow towards its stern and, therefore, the double-ended limitation is absent from the accused device. Plaintiff argues that the proffered declarations[2] and expert testimony create a question of fact regarding whether the Mokai possesses the double-ended limitation.

In relevant part, plaintiff's declaration describes the water craft from its beam to its stern as

[1] The parties' submissions establish that the "beam" of a water craft represents the maximum width of that water craft.

[2] The court has reviewed defendant's objections to plaintiff Arndt's Declaration (Arndt Decl.) pursuant to Federal Rule of Evidence 702 and finds such objections unpersuasive. These objections [102] are overruled.

follows:

> The next 17 inches measured from the beam back tapers from 36 inches to 20 inches gradually within these next 17 inches of length. The next lengthwise increment of 26 inches towards the stern [does not] taper, but remains at 20 inches wide.

Arnd't Decl. ¶ 9.

The court concludes that the Mokai lacks the double-ended limitation as described by the '997 patent's claim construction. In construing the '997 patent, the court defined "double-ended" to mean: "the [water craft's] ends become gradually more narrow toward bow and stern with a transverse dimension no greater than 45% of the maximum beam." Opinion and Order at 19. The operative term in this construction is "gradually." The American Heritage Dictionary of the English Language (4th ed. 2000) defines the word "gradual" as: "[a]dvancing or progressing by regular or continuous degrees[.]" Thus, within the claim's construction, the term "gradually" requires the Mokai's ends to narrow by regular or continuous degrees. The definition of "gradual" does not embrace a narrowing that fails to proceed in degrees or becomes static.

Inspection of the water craft reveals that the narrowing from the Mokai's beam to its stern is not gradual as described by the claim limitation. Rather, portions of the vessel from the water craft's beam to its stern remain static with no narrowing whatsoever. Over two feet of the Mokai's length, from its beam to its stern, does not become gradually narrow as required by the '997 patent's claim construction. Therefore, the Mokai does not literally infringe the '997 patent with regard to the double-ended claim limitation. Accordingly, defendant is entitled to summary judgment as to the double-ended limitation.

2. <u>Basic Symmetry Limitation</u>.

Defendant contends that plaintiff proffers no evidence raising a genuine question of material fact regarding the Mokai's failure to meet the basic symmetry limitation of the construed claim. Plaintiff argues that the Mokai has the basic symmetry limitation because it is symmetrical on a longitudinal axis and the Mokai's overall measurements fall within the United States Coast Guard definition of "Canoe-Kayak-Similar Watercraft." Arndt Decl. ¶ 10-11.

Although the United States Coast Guard's definition previously provided the court with general guidance in constructing the "Kayak" claim limitation, this definition is not dispositive regarding the basic symmetry limitation. In Canoeing and Kayaking: Instruction Manual (American Canoe Association, Manesha Ridge Press 1987), author Laurie Guillon defines symmetry as "the shape of the boat from *front to back* at the waterline." *Id.* at 20 (emphasis added). Symmetrical boats have the "same overall shape" from fore to aft. *Id.*

The court finds that the Mokai lacks the basic symmetry limitation because the water craft does not possess the same overall shape from bow to stern (i.e., from fore to aft).[3] Rather, the portion of the Mokai from its beam to its bow is distinct from that portion stretching from its beam to its stern. Notably, the portion of the Mokai from its beam to its stern narrows abruptly in width and remains narrow to the water craft's stern. In contrast, the portion of the Mokai from its beam to its bow lacks any significant narrowing. The width of this portion of the water craft remains virtually constant with some minimal narrowing towards the water craft's bow. This dissimilarity in shape negates the assertion that the Mokai has the same "overall shape" from fore to aft. Consequently, the Mokai does not literally infringe the '997 patent with regard to the

---

[3] The court rejects plaintiff's argument that longitudinal symmetry (i.e., from the right to left portions of a vessel) constitutes basic symmetry for purposes of this analysis.

basic symmetry limitation. Accordingly, a grant of summary judgment in favor of defendant is proper as to the basic symmetry limitation.

**B. Doctrine of Equivalents.**

Plaintiff also argues that the Mokai infringes the '997 patent based on the doctrine of equivalents. Where literal infringement does not exist, a patent may still be infringed where the accused product is not substantially different than the claimed invention and the product performs substantially the same function as the claimed invention, in substantially the same way, to achieve substantially the same result. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)*; Miles Lab. v. Shandon, Inc.*, 997 F.2d 870, 876 (Fed. Cir. 1993); *see also Insta-Foam Prod. v. Universal Foam Sys*, 906 F.2d 698, 702 (Fed. Cir. 1990). The doctrine of equivalents does not apply where a claim limitation is completely missing, and thus not met equivalently, from the accused device. *Kustom Signals, Inc., v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) ("No claimed [limitation], or an equivalent thereof, can be absent if the doctrine of equivalents is invoked"); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 939 (Fed. Cir. 1987).

Moreover, the doctrine of equivalents does not apply if a prosecution history estoppel exists. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999). This doctrine precludes a patentee from asserting equivalents that would revive subject matter relinquished during prosecution in order to overcome rejections based on prior art. *Id.; see also Litton Sys., Inc., v. Honeywell, Inc.*, 140 F.3d 1449, 1455 (Fed. Cir. 1998).

As discussed above, the Mokai possess neither the Double-Ended nor Basic Symmetry limitations required by the '997 patent. The absence of either of these limitations precludes

plaintiff's doctrine of equivalents argument. Where a claim limitation is completely absent from the accused device, the doctrine is inapplicable. *Kustom Signals, Inc.*, 264 F.3d at 1333. Since neither of the claim limitations can be read on the Mokai, the plaintiff's doctrine of equivalents argument is unavailing and summary judgment in favor of defendant is proper as to that claim.

**C. <u>Indefiniteness</u>.**

Defendant also advances summary judgment arguments asserting that the terms "Kayak-Style Hull" and "Kayak-like Boats" are indefinite. The court, however, found these terms amenable to construction. *See* Opinion and Order issued December 27, 2004, at 16-17. Where a court finds that the terms at issue are amenable to construction, no indefiniteness argument exists. *See Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (the issue of indefiniteness arises only where claims are not amenable to construction). Moreover, in light of this court's findings regarding infringement, the defendant's indefiniteness argument is rendered moot.

**<u>CONCLUSION</u>**

For the reasons discussed above, defendant's Motion for Summary Judgment for Non-Infringement [87] is GRANTED. Defendant's Motion for Summary Judgement for Indefiniteness [38] is DENIED AS MOOT.

IT IS SO ORDERED.

Dated this 24 day of March 2006.

/s/Ancer L.Haggerty
ANCER L. HAGGERTY
United States District Judge